336 So.2d 560 (1976)
UNITED GAS PIPE LINE COMPANY, a Delaware Corporation, and Florida Gas Transmission Company, a Delaware Corporation, Appellants,
v.
William H. BEVIS, As Chairman, et al., Appellees.
No. 46374.
Supreme Court of Florida.
January 7, 1976.
Rehearing Denied April 7, 1976.
*562 Patrick G. Emmanuel and Lawrence W. Oberhausen of Holsberry, Emmanuel, Sheppard, Mitchell & Condon, Pensacola, R.Y. Patterson, Jr., Winter Park, James D. Beasley, and D. Fred McMullen, of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellants.
Joseph A. McGlothlin, Tallahassee, John W. McWhirter, Jr., of Cason, McWhirter, Henderson & Stokes, Tampa, Joseph C. Jacobs and Thomas M. Ervin, Jr., of Ervin, Varn, Jacobs & Odom, Tallahassee, John F. Healy and Richard Gray, Jr., Allentown, Pa., and Robert L. Shevin, Atty. Gen., and William R. Hanley, Asst. Atty. Gen., for appellees.
ENGLAND, Justice.
This case is here on direct appeal from an order of the Leon County Circuit Court which upheld the constitutionality of Section 366.065, Florida Statutes (1973). We have jurisdiction pursuant to Article V, Section 3(b)(1) of the Florida Constitution.
Appellants own and operate interstate gas pipeline systems, selling natural gas to industrial customers and to certain resale distributors in Florida.[1] Appellees Monsanto and Air Products purchase natural gas from appellant United pursuant to private, unregulated contracts. Sales to industrial customers in Florida are permitted only after certificates of public convenience and necessity have been obtained from the Federal Power Commission ("the FPC").[2] The price and terms of sales are not regulated to any extent, however, since federal law does not extend to direct industrial sales[3] and the State of Florida, which could validly regulate these sales, has chosen to exempt them from the jurisdiction of the Public Service Commission ("the Commission").[4]
In 1973 the Florida Legislature enacted Chapter 73-289, Laws of Florida, to provide:
"In order to prevent discrimination or unreasonably high profits upon receipt of a consumer complaint alleging that;
(a) the consumer purchases energy from a company holding a certificate of public convenience and necessity from a state or federal agency authorizing it to sell energy; and
(b) the rates and charges of the company are either discriminatory or unreasonably high; and
(c) the energy product or an alternative energy product is not readily available to the consumer from a competitive supplier; and
(d) the price of energy sold by the company to the consumer is not regulated by a government agency:
the public service commission may assume jurisdiction to investigate the allegations and is authorized to exercise all of the powers and duties it is granted by law for the regulation of public utility rates and charges notwithstanding any *563 exemptions or limitations otherwise placed upon the commission's jurisdiction."
Statutory revision personnel assigned this enactment ("the Act") to Chapter 366 of the Florida Statutes, where it now appears as Section 366.065, Fla. Stat. (1973).
Pursuant to the Act, Monsanto, Air Products and another of United's industrial customers filed complaints with the Commission in order to obtain approval for lower natural gas prices than are specified in their contracts with United. The Commission entertained the complaints despite appellants' objections, and proceedings before the Commission are presently pending. To avert Commission action, United commenced this lawsuit in circuit court, seeking temporary injunctive relief against the Commission and a declaration that the Act is unconstitutional. Florida Gas Transmission Company intervened as a plaintiff in that suit, and Monsanto and Air Products intervened as defendants. The Attorney General of Florida was permitted to intervene in support of the validity of the statute. After initial pleadings framed the legal issues, and in the absence of any factual dispute, the circuit court granted defendants' motion for a summary judgment and expressly upheld the validity of Section 366.065. This appeal followed.
Appellants make a number of constitutional assaults on the Act. They contend that the statute exceeds appropriate standards for the exercise of the police power of the State, that the absence of standards in the Act makes it an invalid delegation of legislative authority,[5] that the title is defective,[6] that it denies them equal protection of the law and deprives them of their property without due process of law,[7] that it constitutes an impairment of their contracts,[8] that it places an undue burden on interstate commerce,[9] and that it conflicts with the federal Natural Gas Act in violation of the supremacy clause of the United States Constitution.[10]
Notwithstanding that acts of the Legislature are presumptively valid,[11] we agree with appellants that the statute is constitutionally defective.
Both sides agree that the Florida Legislature could repeal the exemption expressed in Section 366.02, Florida Statutes, and thereby extend the full jurisdiction of the Commission to direct industrial sales of natural gas by interstate pipe line transmission companies. Both sides also agree that the Legislature did not do that in this Act. Since the Legislature extended less than full regulatory authority to the Commission, the question for our resolution is whether this limited regulatory intrusion into an unregulated commercial activity is valid. At least three features of this intrusion compel our invalidation.
Our analysis of the Act persuades us that, no matter how beneficent the public purpose behind its enactment,[12] *564 the selective and unusual methodology for authorizing price-only regulation is an improper exercise of the state's police power. Any statute enacted as an exercise of sovereign police power should, at a minimum, further a broad "public" interest.
"To be valid, [the police power] must apply to the general public as distinguished from a particular group or class."[13]
This Act has potential benefit for a limited class of natural gas users in Florida. Even that class is selectively protected, however, since the Act would require separate initiating complaints from every industrial user in Florida before its benefits could be extended to all of them.[14] The public welfare for which the police power of the State has been invoked[15] must be considered against the rights being affected by this considerable power.
A particularly invidious feature of the Act is its one-side operation. While individual customers of the appellants can invoke the jurisdiction of the Commission to reduce their contract rates for natural gas, the natural gas companies have no correlative right to seek Commission approval of higher contract rates, jurisdictional protection, or even enforced user continuance.[16] The effect of this imbalance is the possibility that appellants could be ordered by the State's regulatory agency to reduce gas charges, while being required by the federal regulatory agency to pay higher well-head prices and maintain contract deliveries.[17] The State's regulation of commercial enterprise is generally a bilateral bargain. The enterprise gives up an unlimited right to compete in the marketplace and relinquishes, among other business prerogatives, the freedom to set its own prices. In exchange, the State guarantees (among other things) at least an opportunity to earn a reasonable return on capital and a forum in which to seek price adjustments. Where the State attempts a limited form of regulation of existing commercial enterprises, it must give as much as it takes. The restrictive and one-sided application of the State's action in this case operates to impair existing contracts.[18]
We also agree with appellant's contention that the title of the Act did not meet the mandate of our Constitution that the subject of all legislation "shall be briefly expressed in the title."[19] This provision *565 assures adequate notice to legislators and to the public with respect to impending legislation. This Act contained insufficient warning that a statutory exemption contained in chapter 366 was being partially repealed. The title of Chapter 73-289 reads:
"An act relating to the Florida Public Service Commission authorizing it to assume jurisdiction over certain practices of companies selling energy, to prevent discrimination and unreasonable profits as a result of energy crises, and providing an effective date."
It is apparent from the body of the Act that it cannot operate independently of the general regulatory authority conferred in Chapter 366, at least not without violating appellant's right to due process of law in proceedings before the Commission.[20] The title is also defective, therefore, because the Act's dependency on other laws for effectiveness or for operation must give notice of that interrelationship.[21]
The Legislature can validly regulate natural gas distributors as an exercise of the police power of the State if the public interest so requires, simply by repealing the exemption which now appears in Section 366.02, Florida Statutes (1973). It may not, however, authorize price ceilings through customer initiative while leaving all other aspects of the industry unregulated. The order of the circuit court is quashed, and this cause is remanded for entry of a summary judgment for appellants.
BOYD and OVERTON, JJ., concur.
SUNDBERG, J., and MOORE, Circuit Judge, concur in result only.
ADKINS, C.J., and ROBERTS, J., dissent.
On consideration of the Petitions for Rehearing filed by attorneys for appellees and replies thereto,
IT IS ORDERED that said petitions are denied.
OVERTON, C.J., BOYD and SUNDBERG, JJ., and MOORE, Circuit Judge, concur.
ENGLAND, J., concurs with opinion, with OVERTON, C.J., concurring.
ROBERTS and ADKINS, JJ., dissent.

ON REHEARING
ENGLAND, Justice (concurring in denial).
I would deny rehearing in this case in the face of the multi-page, argumentative rehearing petitions which have been filed, for the reasons set forth in Texas Co. v. Davidson, 76 Fla. 475, 478, 80 So. 558, 559 (1918). See also Florida Appellate Rule 3.14(b), which states that a petition for rehearing shall be "without argument".
Counsel for Monsanto (7 page petition), Air Products (14 page petition), and the Public Service Commission (4 page petition) have essentially reargued the entire case, prompting counsel for United Gas Pipe Line and Florida Gas Transmission to file brief-like replies of 15 and 18 pages, respectively. This expenditure of counsels' time, and the clients' money, is completely unjustified. This case had been argued, briefed and fully considered by the Court when the decision was initially rendered. It is not the office of rehearing to invite a complete re-analysis of all that has gone before. See State ex rel. Jaytex Realty Co. v. Green, 105 So.2d 817, 818-19 (1st DCA Fla. 1958).
OVERTON, C.J., concurs.
NOTES
[1] Sales by appellants for resale are regulated by the Federal Power Commission and are not involved in this proceeding.
[2] 15 U.S.C. § 717f(c).
[3] See Natural Gas Act, 15 U.S.C. § 717(b); Panhandle Eastern Pipe Line Co. v. Public Svc. Comm'n of Indiana, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128 (1947).
[4] Section 366.02, Fla. Stat. (1973).
[5] Art. III, § 1, Fla. Const. (1968).
[6] Art. III, § 6, Fla. Const. (1968).
[7] Amend. XIV, § 1 U.S.Const.
[8] Art. I, § 10, Fla. Const. (1968); Art. I, § 10, U.S.Const.
[9] Art. I, § 8, U.S.Const.
[10] Art. VI, U.S.Const.
[11] Hunter v. Flowers, 43 So.2d 435 (Fla. 1949).
[12] Appellees contend that the Act has a public purpose even though a limited number of commercial enterprises may benefit from its provisions. They concede that this legislation is not directed to the general public, and that the Act carries no guarantee that ultimate consumers of industrial users will benefit from price reductions ordered by the Commission. Although legislation is not necessarily invalid because it benefits only a limited group, the class of "public" affected by the Act is relevant when we are weighing an exercise of the State's police power against the impingement of contract rights. Town of Bay Harbor Islands v. Schlapik, 57 So.2d 855 (Fla. 1952).
[13] Liquor Store, Inc. v. Continental Distilling Corp., 40 So.2d 371, 374 (Fla. 1949).
[14] Appellees admit that one company may complain and invoke the jurisdiction of the Commission under the Act in order to secure a reduced fuel charge, while a non-complaining neighboring industrial user under an identical contract with the same supplier would continue to pay a different and higher price.
[15] Section 366.01, Fla. Stat. (1973), declares the regulation of public utilities to be "an exercise of the police power of the state for the protection of the public welfare".
[16] The Act does not redefine "public utility" to include natural gas transmission companies, which would bring them within the regulatory jurisdiction of the Commission for all purposes. It does not even open the Commission's doors to these companies for rates and charges matters. Thus, they are barred from initiating a rate reduction proceeding to prevent unreasonably low rates if the evidence warrants such a finding.
[17] The FPC sets well-head purchase prices and prohibits a suspension of service. 15 U.S.C. § 717f.
[18] We have generally prohibited all forms of contract impairment. E.g., Yamaha Parts Distr. Inc. v. Ehrman, Fla., 316 So.2d 557 (1975); Fort Lauderdale v. State ex rel. Elston Bank & Tr. Co., 125 Fla. 89, 169 So. 584 (1936). The Legislature's enactment here is really designed to offer a form of relief which is similar to that historically provided by courts of equity for unconscionable contracts. See 1 Corbin on Contracts § 128 (1963). In those situations, however, courts will invalidate the entire contract rather than reform any particular contract term. It follows, therefore, that a legislative exercise, let alone delegation, of the power to modify "discriminatory" or "unreasonable" contract terms is doubly defective, being an impermissible impairment of contracts and an invalid intrusion into the powers of the judiciary.
[19] Art. III, § 6, Fla. Const. (1968).
[20] Appellees defend the Act from due process attacks by asserting that the processes and safeguards of normal regulatory proceedings, as developed throughout Chapter 366, are incorporated by reference and available to appellants in Section 366.065 proceedings.
[21] Auto Owners Ins. Co. v. Hillsborough Cty. Aviation Auth., 153 So.2d 722 (Fla. 1963); Lipe v. Miami, 141 So.2d 738, 742-743 (Fla. 1962).