**Alexander M. JENKINS et al., Plaintiffs,**

v.

**Donald H. RUMSFELD, Secretary of Defense, et al.**

Civ. A. No. 75–65–NN.

United States District Court,
E. D. Virginia,
Newport News Division.

May 11, 1976.

Margaret McPherson, Newport News, Va., for plaintiffs.

William B. Cummings, U. S. Atty., E. D. Va., and Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for the U. S.

Michael Wolf, New York City (Henry Kaiser, Ronald Rosenberg, Van Arkel, Kaiser, Gressman & Rosenberg, Washington, D. C., Norman Olitsky, Olitsky & Olitsky, Portsmouth, Va., on brief) for the union.

Before BUTZNER, Circuit Judge, KELLAM, Chief Judge, and CLARKE, District Judge.

BUTZNER, Circuit Judge:

Since 1908 federal law has provided that "[n]o Army band or member thereof may receive remuneration for furnishing music outside the limits of an Army post in competition with local civilian musicians." [1] The plaintiffs, army bandsmen, seek to enjoin enforcement of this statute and a sup-

1. 10 U.S.C. § 3634.

plementary provision of the code,[2] contending that these deprive army enlisted men of due process of law and deny them the equal protection of the laws secured by the fifth amendment. The bandsmen also allege that the statutes are void for vagueness and violate the Virginia right to work law. A three-judge court was convened to hear the case. We find the statutes constitutional and deny the relief which the plaintiffs seek.

The material facts are not in dispute. The plaintiffs, enlisted men in the United States Army, are assigned to the Continental Army Band at Fort Monroe, Virginia. The Hispaniola Restaurant in Hampton, Virginia, hired them to play during their off-duty hours. The Musicians' Protective Union complained to the bandsmen's commanding officer, charging them with violating 10 U.S.C. §§ 974 and 3634. The commanding officer ordered the men to comply with the statutes, and they then instituted this suit.[3]

## I

The texts and legislative history of §§ 974 and 3634 disclose that Congress enacted these statutes to prevent enlisted men from competing with civilians for work.[4] Two principles of constitutional law coalesce to sustain the validity of the statutes against the charge that they violate the due process clause of the fifth amendment. The first principle deals with Congress's power over the military, and the second pertains to legislative authority in general over business practices deemed injurious to the economy.

■■■ The Constitution empowers Congress to raise and support armies and to make all laws necessary and proper for executing this power. U.S.Const., art. 1, § 8. This grant has uniformly been construed as "broad rather than restrictive," *Lichter v. United States*, 334 U.S. 742, 755, 68 S.Ct. 1294, 1301, 92 L.Ed. 1694, 1710 (1948); *United States v. O'Brien*, 391 U.S. 367, 371, 88 S.Ct. 1673, 1676, 20 L.Ed.2d 672, 676 (1968). It embraces the authority to establish military bases. As an incident to exercise of its specific powers, Congress may enact laws to ensure proper implementation of its policies, *cf. McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579, 605 (1819). Therefore, Congress possesses incidental authority to lessen the economic impact of military bases on nearby communities by regulating the conduct of servicemen assigned there. Since the statutes fall within the scope of congressional

---

**2.** Title 10 U.S.C. § 974 provides:

"Except as provided in section 6223 of this title no enlisted member of an armed force on active duty may be ordered or permitted to leave his post to engage in a civilian pursuit or business, or a performance in civil life, for emolument, hire, or otherwise, if the pursuit, business, or performance interferes with the customary or regular employment of local civilians in their art, trade, or profession."

The proviso referring to 10 U.S.C. § 6223 excepts the United States Marine Corps band, when authorized by the President, and the United States Naval Academy band from the general prohibition against competing with civilian musicians.

**3.** The bandsmen sought an injunction restraining the union from further enforcement efforts. The union opposed the injunction, participated in all pretrial proceedings, and filed a trial brief. At the trial, however, the bandsmen moved that the union be dismissed without prejudice. The union, we believe, is a proper party to the suit, and the plaintiffs' motion will be denied. Fed.R.Civ.P. 20(a); *cf. United*

*States v. Mississippi*, 380 U.S. 128, 141–42, 85 S.Ct. 808, 815, 13 L.Ed.2d 717, 725–726 (1965).

**4.** 10 U.S.C. § 3634 is derived from the Act of May 11, 1908, ch. 163, 35 Stat. 110. The restriction on bandsmen was added as a proviso to the bill which increased army salaries. In response to a question on the House floor, a proponent of the bill stated, "I want to say to the gentlemen that [the proviso] was put in to protect civilian bands from competition with military bands." 42 Cong.Rec. 2626 (1908).

10 U.S.C. § 974 is derived from the Act of June 3, 1916, ch. 134, § 35, 39 Stat. 188. The restriction on off-duty employment was added as a floor amendment in the Senate. The proponent of the amendment explained that the purpose of the amendment ". . . was to prevent competition between the men who are hired and paid by the taxpayers of the country and the men who pay the taxes . . . . It was intended to avoid the evil of competition between two classes of men, the one class supported solely by the Government and the other not so supported." 53 Cong.Rec. 6345–47 (1916).

power, we must next determine whether they are a necessary and proper exercise of that power.

■ The Supreme Court has rejected the doctrine that the due process clause authorizes courts to nullify laws regulating business because they may be unwise, inappropriate, or improvident. *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563, 572 (1955). Consequently, in dealing with economic matters affecting the powers conferred on it by the Constitution, Congress may proscribe practices which it deems injurious if, as here, the regulation does not transgress a specific constitutional provision. *Cf. North Dakota Pharmacy Board v. Snyder's Stores*, 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973); *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). We hold, therefore, that the challenged statutes do not deprive the plaintiffs of liberty or property without due process of law.

## II

The bandsmen complain that they are denied the equal protection of the laws secured by the due process clause of the fifth amendment because they are barred from off-duty employment, which is available to other enlisted men and to officers. We find no merit in this complaint. All members of the band are enlisted men, and there is no distinction between them and other enlisted men. While § 3634 imposes a conditional restraint only on army bandsmen, § 974, though phrased differently, imposes a similar limitation on all enlisted men.

■ Officers, too, are restricted from engaging in civilian employment, but on different terms from enlisted men. They cannot take off-duty jobs that interfere with their military duties.[5] But the different standards for restricting civilian employment of officers and bandsmen do not

reach constitutional proportions. The equal protection clause forbids only invidious discrimination. It tolerates rational classifications, and it permits legislative action that is addressed only to "the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955). Congress could properly take into consideration the differences between officers and enlisted men with respect to the number of each assigned to military posts, their military duties, and the amount of pay each receives. These factors could lead Congress to believe the enlisted men, not the officers, presented the most pressing danger of competition for civilian jobs during off-duty hours. We conclude, therefore, that the classification selected by Congress was rational and that the disparate treatment of officers and enlisted men does not deny the band members equal protection of the laws. *Cf. Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975).

■ Nor do we find any invidious discrimination because the restriction is enforced only when civilians—invariably union members—complain. The statutes do not bar all off-duty jobs—only those resulting in unlawful competition. The army's policy of enforcing the statutes on receipt of verified complaints is a reasonable means of determining whether the law is being violated.

## III

■ The remaining grounds of attack on the statutes require only brief comment. There is no suggestion in the record that the statutes were enforced by criminal sanctions. Nevertheless, on the assumption that a commanding officer could prefer charges against a soldier who violated them, we will consider the plaintiffs' claim

---

5. Title 10 U.S.C. § 973(a) provides:

"No officer on the active list of the Regular Army, Regular Navy, Regular Air Force, Regular Marine Corps, or Regular Coast Guard may accept employment if that employment requires him to be separated from his organization, branch, or unit, or interferes with the performance of his military duties."

that they are void for vagueness. The Supreme Court has held that the proper standard for review of a charge of vagueness in the Code of Military Justice is the test applied for criminal laws governing economic affairs. *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439, 457 (1974). Although the statutes are not part of the Code, they govern military conduct. The factors distinguishing military society, which the Court recognized in *Parker*, are equally applicable here. Moreover, the statutes regulate economic affairs. For these reasons, the use of the *Parker* standard is appropriate.

■ In *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32–33, 83 S.Ct. 594, 597–598, 9 L.Ed.2d 561, 565 (1963), the Court defined "void for vagueness" as meaning "criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." The statutory ban on employment "in competition with local civilian musicians" (§ 3634), or when the employment "interferes with the customary or regular employment of local civilians in their art, trade, or profession" (§ 974), sufficiently informs the bandsmen when they cannot take civilian jobs. This is at least as definite as the statutory provision against selling goods at "unreasonably low prices for the purpose of destroying competition or eliminating a competitor," which was upheld in *National Dairy, supra.*

■ In contrast to the application of the vagueness doctrine in first amendment cases, where chilling of freedom of speech is a danger, economic laws are not judged solely on their face. Instead, as *National Dairy* explains, 372 U.S. at 36, 83 S.Ct. at 599, 9 L.Ed.2d at 567, economic regulations must be tested in the light of their application. As the law is administered by the military officials, the bandsmen have not been barred from off-duty employment unless a complaint is received that they are competing with civilians. This procedure gives them adequate notice of the statute's requirements.

■ Finally, we find no merit in the plaintiffs' claim that the federal statutes violate the Virginia right to work laws.[6] We need not resort to the Constitution's supremacy clause because the federal statutes do not conflict with the state's. The policy of the Virginia Act is to assure that a person's right to work shall not be abridged on account of membership or non-membership in a union. The federal statutes neither compel nor prohibit union membership. They are neutral on this subject.

We conclude that the plaintiffs are not entitled to the relief which they seek and their complaint should be dismissed.

---

6. Va.Code Ann. §§ 40.1–58 to –69 (1970).