PATCH ENTERPRISES, INC., Faye P.
Johnson and David L.
Johnson, Plaintiffs,

v.

Malcolm McCALL, as Sheriff of Lake
County, Florida and Gordon G. Oldham,
Jr., as State Attorney for the Fifth Judi-
cial Circuit of Florida, Defendants.

No. 78–2–Civ–Oc.

United States District Court,
M. D. Florida,
Ocala Division.

March 6, 1978.

Robert E. Austin, Jr., Austin & Burleigh, Professional Ass'n, Leesburg, Fla., for plaintiffs.

Horace Danforth Robuck, Jr., Tavares, Fla., Neal D. Huebsch, Eustis, Fla., for defendants.

## OPINION

CHARLES R. SCOTT, District Judge.

### I. *Jurisdiction*

Plaintiffs invoke the Court's jurisdiction under 28 U.S.C. § 1343(3), for the redress of allegedly deprived constitutional rights. Plaintiffs seek injunctive relief for their claims presented under 42 U.S.C. § 1983. Additionally, the Courts' pendent jurisdiction is invoked over claims arising from the "common nucleus of operative facts," *UMW v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 228 (1966), with which this case is involved. Those pendent claims are asserted under the rights guaranteed by the Constitution of the State of Florida.

### II. *Status of Case*

This case was commenced on January 11, 1978, at which time the Court issued a temporary restraining order against defendants. By consent of the parties, that temporary restraining order was extended until March 6, 1978, or until the Court's final judgment in this case, whichever occurred first. Pursuant to Fed.R.Civ.P. 65(a)(2), hearing on plaintiffs' preliminary injunction motion was consolidated with a final hearing on the merits; and this case was tried before the Court, without a jury, on January 30, 1978. After post-trial briefing, final arguments were heard on February 24, 1978.

### III. *Parties*

Plaintiff, Patch Enterprises, Inc. ("Patch") is a close corporation engaged in operating a bottle club known as "The Odyssey", located in an unincorporated area of Lake County, Florida, between the cities of Leesburg and Tavares on Highway U.S. 441. Plaintiff, Faye P. Johnson, is the sole shareholder and president of Patch, as well as one of its employees at The Odyssey. Plaintiff, David L. Johnson, is the husband of plaintiff, Faye P. Johnson, and is also an employee of Patch at The Odyssey.

Defendant, Malcolm McCall is the Sheriff of Lake County, charged with enforcing the laws of the State of Florida and of Lake County. Defendant, Gordon G. Oldham, Jr., Esquire, is State Attorney for the Fifth Judicial Circuit of the State of Florida, located in Lake County, and is charged with prosecuting alleged violations of the laws of the State of Florida and of Lake County.

### IV. *Facts*

Since August 1977, plaintiffs have operated a bottle club in unincorporated Lake County. Previously, they had operated in the City of Leesburg. After enactment of a municipal ordinance prohibiting bottle clubs, plaintiffs moved The Odyssey to its present location. The Odyssey is apparently the only bottle club in Lake County. It is an after-hours nightclub where persons

who bring their own alcoholic beverages consume them on the premises; however, alcoholic beverages are not sold on the premises, since plaintiffs do not have a license to sell alcoholic beverages.

At the bottle club, records are played by a disc jockey for background entertainment and for dancing. Non-alcoholic beverages, pizza, sandwiches, and pre-packaged food are sold. A game room where patrons may play foosball, pinball and pool is available. Patrons of The Odyssey bring their own alcoholic beverages with them. An admission or cover charge is required at the door: $2.00 per person bringing a bottle of alcoholic beverage; $3.00 per person without any alcoholic beverage; and $3.50 per person for anyone bringing a six-pack of beer. More than eighty percent of The Odyssey's business revenues are derived from operation between 2:00 o'clock A.M. and 6:00 o'clock A.M.

The Odyssey is located in an area of the county that is zoned for commercial use. Highway U.S. 441 is the most direct route between Ocala and Orlando. Along that highway are other businesses and residences. Immediately east of The Odyssey are a vacant lot and another county road, across from which is a mobile home dealership. To the west of The Odyssey is a county road, directly across from which is a vacant lot and an automobile dealership. Still farther west is a package liquor store. A farm equipment dealer and a beauty shop are also in the immediate area. To the northwest of The Odyssey are located residences across the county road.

After The Odyssey opened at its present location, residents living near it complained to the Lake County Board of County Commissioners about noise and disturbances caused by The Odyssey's patrons. At successive hearings on August 16, November 1, November 8, and December 6, 1977, the Lake County Board of County Commissioners heard complaints from residents near The Odyssey and discussed the problems raised by those complaints. On January 3, 1978, the Lake County Board of County Commissioners passed an ordinance prohib-

iting establishments which deal in alcoholic beverages from permitting the consumption of alcoholic beverages on their premises between the hours of 2:00 o'clock A.M. and 7:00 o'clock A.M., seven days a week. The ordinance defines 'establishments which deal in alcoholic beverages' as well as 'alcoholic beverage'. After being filed with the Secretary of State on January 6, 1978, the county ordinance became effective at once. Between January 6 and January 11, 1978, The Odyssey was closed in compliance with the ordinance. Since the issuance of the temporary restraining order, and the consensual extension of that restraining order, The Odyssey has been able to operate business as usual.

## V. *Issues*

The first issue raised in this case is whether the ordinance unconstitutionally denies the equal protection of the laws to plaintiffs by including them in a prohibited classification that is unreasonably and arbitrarily discriminated against. The second issue presented is whether the ordinance's proscription is so unjustifiable and unreasonable as to constitute a denial of plaintiffs' due process rights. The third issue is whether the ordinance amounts to an impermissible exercise of the county's police power under the Florida Constitution. The fourth issue is whether the ordinance is an improper attempt to curb legislatively a private nuisance that would be subject only to judicial injunction.

## VI. *Law*

### 1. *Equal Protection*

 Any form of state legislation creating discriminatory classifications (1) that concern fundamental constitutional rights, or (2) whose defining criteria are inherently suspect, or (3) that are unnecessarily restrictive and unreasonably related to the legislation's purported purpose, is subject to challenge and examination as a denial of equal protection of the laws. *Craig v. Boren*, 429 U.S. 190, 210 and n. *, 97 S.Ct. 451, 463, 50 L.Ed.2d 397, 415 and n. * (1977)

(Powell, J., concurring). Every decision, of course, discriminates. To choose one thing necessarily excludes and rejects everything else that the selected thing is not. The standard of the equal protection clause is whether a particular legislative decision unreasonably discriminates either in its definition of a class, in its treatment of fundamental rights, or in its choice of means to accomplish an intended objective.

■ The county ordinance in this case does not define the class of persons whom it regulates by means of inherently suspect criteria. Neither does the ordinance affect any fundamental constitutional right. The ordinance defines and regulates a class of establishments dealing in alcoholic beverages. The members of that class are establishments and businesses licensed to sell alcoholic beverages or permitting the consumption of alcoholic beverages on their premises. Such establishments expressly include bottle clubs, hotels, motels, restaurants, and night clubs. The class is forbidden to "permit the consumption of alcoholic beverages" on the premises between 2:00 o'clock A.M. and 7:00 o'clock A.M. daily. Hotels, motels, and restaurants are expressly allowed to remain open for business during those hours, but the sale of consumption of alcoholic beverages is prohibited. There is nothing inherently suspect about regulating businesses that deal in alcoholic beverages. It is an intrinsic power of state governments and their subdivisions, fortified by the federal Constitution's Twenty-first Amendment, to regulate the sale, distribution, importation, and use of alcoholic intoxicants, so long as that regulation does not irrationally and invidiously discriminate. *California v. LaRue*, 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342, 349–50 (1972); *cf. Craig v. Boren*, 429 U.S. at 204–05, 97 S.Ct. at 460–61, 50 L.Ed.2d at 411, 413–14, and 429 U.S. at 215, 97 S.Ct. at 466, 50 L.Ed.2d at 417–18 (Stewart, J., concurring in the judgment). There is, furthermore, no fundamental constitutional right of persons to sell or consume alcoholic beverages.

Hence, the question presented by plaintiffs' equal protection challenge to the ordinance is whether its proscriptive and regulatory classification (1) has a legitimate governmental objective and (2) is a reasonable means to achieve that goal. *Zablocki v. Redhail*, —— U.S. ——, ——, ——, 98 S.Ct. 673, 688, 689, 54 L.Ed.2d 618, 639, 640 (January 18, 1978) (Powell, J., concurring in the judgment); *Craig v. Boren*, 429 U.S. at 211, 97 S.Ct. at 464, 50 L.Ed.2d at 415 (Powell, J., concurring); *Weber v. Aetna Casualty and Surety Co.*, 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768, 777 (1972); *Levy v. Louisiana*, 391 U.S. 68, 71, 88 S.Ct. 1509, 1511, 20 L.Ed.2d 436, 439 (1968). The legitimate interests which defendants allege are the objective of the ordinance are generally the safety and welfare of the county's residents. It was the County Commissioners' decision that it best served their constituents to control the sale and consumption of alcoholic beverages during the late night and early morning hours. More specifically, a decrease in the incidence of drunken driving and automobile accidents, as well as sudden public violence, often resulting in serious injury or death, was intended. These are not unreasonable legislative goals.

■■ The means employed by the ordinance to attain its intended objectives, are an absolute ban on the sale or permitted consumption of alcoholic beverages by members of the class of "establishments dealing in alcoholic beverages." In enacting socio-economic, general welfare legislation, states and their subdivisions have a wide latitude of discretion to select implementing classifications. *Weber v. Aetna Casualty and Surety Co.*, 406 U.S. at 172, 92 S.Ct. at 1405, 31 L.Ed.2d at 777; *Graham v. Richardson*, 403 U.S. 365, 371–72, 91 S.Ct. 1848, 1851–52, 29 L.Ed.2d 534, 541–42 (1971); *Levy v. Louisiana*, 391 U.S. at 71, 88 S.Ct. at 1511, 20 L.Ed.2d at 439; *Morey v. Doud*, 354 U.S. 457, 463, 77 S.Ct. 1344, 1348, 1 L.Ed.2d 1485, 1490 (1957). Such instrumental classifications need not be universal, all-inclusive, or drawn with absolute precision. *Estelle v. Dorrough*, 420 U.S. 534,

540, 95 S.Ct. 1173, 1177, 43 L.Ed.2d 377, 382–83 (1975); *Morey v. Doud,* 354 U.S. at 463, 77 S.Ct. at 1348, 1 L.Ed.2d at 1490. The overall requirement of the Equal Protection Clause, however, is that the statutory line that draws distinctions and classifications is a rational one, bearing "some rational relationship to a legitimate state purpose." *Weber v. Aetna Casualty and Surety Co.,* 406 U.S. at 172, 92 S.Ct. at 1405, 31 L.Ed.2d at 777; *Graham v. Richardson,* 403 U.S. at 371, 91 S.Ct. at 1851, 29 L.Ed.2d at 541; *Levy v. Louisiana,* 391 U.S. at 71, 88 S.Ct. at 1511, 20 L.Ed.2d at 439. *See also Zablocki v. Redhail,* —— U.S. at ——, 98 S.Ct. 673 (Powell, J., concurring in the judgment); *Craig v. Boren,* 429 U.S. at 211, 97 S.Ct. at 464, 50 L.Ed.2d at 415 (Powell, J., concurring).

■ On its face, the county ordinance in this case applies to any establishment which deals in alcoholic beverages, as defined by the ordinance. · That definition includes bottle clubs, hotels, motels, restaurants, night clubs, or similar establishments where alcoholic beverages are sold, dispensed, served, or permitted to be consumed. Defendants, in addition, have interpreted the ordinance as applying uniformly to all bars, lounges, country clubs, and any establishment or business that sells or permits the consumption of alcoholic beverages. Plaintiffs' contention that the ordinance's classification discriminates against them, therefore, is contrary to both the facial language and the interpretation of the ordinance. The only remaining question, therefore, is whether the uniform classification prohibited by the ordinance is drawn without any rational relationship to the intended, general welfare purpose of the ordinance. The Court holds that this absolutely and unvaryingly prohibited classification, evenly applied, is fairly, substantially, and reasonably related to. the safety and general welfare aims of the ordinance.

### 2. *Substantive Due Process*

■ Recently, Justices Stewart and Powell have illustrated the closely related analyses of Fourteenth Amendment substantive due process and equal protection. *See Zablocki v. Redhail,* —— U.S. at —— – ——, 98 S.Ct. 673 (Stewart, J., concurring in the judgment) and —— – —— (Powell, J., concurring in the judgment). *Cf. Moore v. East Cleveland, Ohio,* 431 U.S. 494, 501–03 and n. 10, 97 S.Ct. 1932, 1936–37 and n. 10, 52 L.Ed.2d 531, 539–40 and n. 10 (1977). Often the "equal protection doctrine . . is no more than substantive due process by another name." *Id.* —— U.S. at ——, 98 S.Ct. at 686 (Stewart, J.). Attacks upon legislative activity of a state and its political subdivisions can be viewed from either analytical perspective. The legislation in question can be examined to determine whether its classifying distinctions lack any reasonable relationship to achieve any legitimate purpose (equal protection), or it can be examined to determine whether it unreasonably and unjustifiably transgresses the fundamental restrictions on the power of government to intrude upon individual rights and liberty (substantive due process). Under either analysis, it is the adoption of irrational legislative means to achieve asserted goals that violate the constitutional guarantee.

■ The basic test of substantive due process is whether the state can.justify the infringement of its legislative activity upon personal rights and liberties. So long as the legislative activity does not encroach upon constitutional guarantees, or run afoul of federal statutory law, a state has a broad scope of discretion in which to regulate the conduct of its citizens. *Bigelow v. Virginia,* 421 U.S. 809, 825 n. 10, 95 S.Ct. 2222, 2234 n. 10, 44 L.Ed.2d 600, 613–14 n. 10 (1975); *North Dakota State Bd. of Pharmacy v. Snyder's Drug Stores, Inc.,* 414 U.S. 156, 165, 94 S.Ct. 407, 413, 38 L.Ed.2d 379, 386 (1973), *quoting Lincoln Union v. Northwestern Co.,* 335 U.S. 525, 536–37, 69 S.Ct. 251, 257, 93 L.Ed. 212, 220–21 (1949); *Jenkins v. Rumsfeld,* 412 F.Supp. 1177, 1180 (E.D.Va. 1976). It need only be shown that the challenged legislative activity is not arbitrary or unreasonable. *North Dakota State Bd. of Pharmacy v. Snyder's Drug Stores, Inc.,* 414 U.S. at 164, 94 S.Ct. at 412, 38

L.Ed.2d at 386; *Buhr v. Buffalo Public School Dist. No. 38*, 509 F.2d 1196, 1200 (8th Cir. 1974); *Jeffries v. Turkey Run Consolidated School Dist.*, 492 F.2d 1, 3–4 (7th Cir. 1974) (Stevens, J.). Courts will not be concerned with whether the particular legislation in question is the most prudent choice, or is a perfect panacea, to cure the ill or achieve the interest intended. *North Dakota State Bd. of Pharmacy v. Snyder's Drug Stores, Inc.*, 414 U.S. at 167, 94 S.Ct. at 414, 38 L.Ed.2d at 387. If there is a legitimate state interest which the legislation aims to effect, and if the legislation is a reasonably related means to achieve the intended end, it will be upheld. *Zablocki v. Redhail,* —— U.S. at ——, ——, ——, 98 S.Ct. 673 (Stewart, J., and Powell, J.); *Wall v. American Optometric Ass'n.*, 379 F.Supp. 175, 191 (N.D.Ga.1974), *aff'd* 419 U.S. 888, 95 S.Ct. 166, 42 L.Ed.2d 134 (1974). Nevertheless, despite a state's wide discretion, and the cautious restraint of the courts, there remain basic restrictions and limits on a state's legislative power to intrude upon individual rights, liberties, and conduct. To exceed those bounds without rational justification is to collide with the Due Process Clause. *Zablocki v. Redhail,* —— U.S. —— —— and —— —— ——, 98 S.Ct. 673 (Stewart, J.) (Powell, Jr.); *Moore v. East Cleveland, Ohio*, 431 U.S. at 498–503, 97 S.Ct. at 1935–38, 52 L.Ed.2d at 537–40.

■ The Court has already found that the stated purposes of the county ordinance in this case are reasonable ones. There is no constitutional provision, or federal statutory law, that guarantees the right to sell or consume alcoholic beverages. Neither is there a fundamental right or liberty of individuals to sell, use, or permit the consumption of alcoholic beverages in one's business. The particular ordinance in this case is a reasonable legislative instrument to achieve a legitimate concern of the county. It is neither arbitrary or irrational; and this Court will not propose to review the wisdom or efficaciousness of it. The ordinance, as a reasonable result of the county's discretion to regulate the sale and use of alcoholic beverages for the safety and welfare of its residents, does not offend the Due Process Clause.

### 3. Police Power of the State

■ The doctrine of the state's police power, under the Florida constitution, is very similar to the doctrine of substantive due process under the federal constitution. First, the exercise by a state or its political subdivisions of the inherent police power must be in the interest of achieving a public purpose, such as the health, safety, morals, or general welfare of the public. *United Gas Pipe Line Co. v. Bevis*, 336 So.2d 560, 563–64 and n. 12 (Fla.1976); *Eskind v. Vero Beach*, 159 So.2d 209, 211, 212 (Fla.1963); *Pinellas County v. Dynamic Investments, Inc.*, 279 So.2d 97, 98 (2d D.C.A. Fla. 1973). To be truly a public purpose, more than just a limited group or a particular class must be benefited by the exercise of the police power. *United Gas Pipe Line Co. v. Bevis*, 336 So.2d at 563 n. 12, 564; *Liquor Store, Inc. v. Continental Distilling Corp.*, 40 So.2d 371, 374 (Fla.1949). Second, the specific form of police power chosen must be reasonably related to the public purpose, and must not be an unreasonably restrictive encroachment upon the particular rights curtailed. *United Gas Pipe Line Co. v. Bevis*, 336 So.2d at 564.

> When there is no reasonably identifiable rational relationship between the demands of the public welfare and the restraint upon private business, the latter will not be permitted to stand. *Eskind v. Vero Beach*, 159 So.2d at 212.

Third, the specific exercise of police power chosen must be impartial and nondiscriminatory in its proscriptions. *United Gas Pipe Line Co. v. Bevis*, 336 So.2d at 564; *Eskind v. Vero Beach*, 159 So.2d at 211, 212; *Pinellas County v. Dynamic Investments, Inc.*, 279 So.2d at 98. Persons engaged in similar business activities must be treated without favoring any particular ones. *Eskind v. Vero Beach*, 159 So.2d at 211, 212. If a particular form of police power exercised satisfies those criteria,

> . . . courts will not substitute their judgment for that of the public officers

charged with a duty concerning such matters . . . *Pinellas County v. Dynamic Investments, Inc.,* 279 So.2d at 98.

■ Plaintiffs allege that the county ordinance in this case (1) was enacted without legal authority; and (2) if authorized, still constitutes an abuse of the county's police power. Article 8, section 1(f) of the Florida constitution provides that noncharter counties of the State shall exercise self-governmental powers and are permitted to enact "county ordinances not inconsistent with general or special law." Among the powers enumerated by Fla.Stat. § 125.01(1) are to

(t) adopt ordinances and resolutions necessary for the exercise of its powers and prescribe fines and penalties for the violation of ordinances . . .

as well as to

(w) perform any other acts not inconsistent with law which are in the common interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law.

Subsection (3)(a) additionally states that the enumeration of those powers does not limit the county's implied powers. While the power of counties to enact local ordinances is limited to consistency with general or special state law, *Townley v. Marion County,* 343 So.2d 1312 (1st D.C.A. Fla. 1977), there is no inconsistent or pre-emptive state law which would make the present county ordinance ultra vires. Hence, the only remaining question is whether the county abused its police power in enacting ordinance 1978–1.

■ Determination of a county's public purpose for enacting an ordinance may be express or implied in the provision of the ordinance. *Cable-Vision, Inc. v. Freeman,* 324 So.2d 149, 154 (3d D.C.A. Fla. 1975), *appeal dismissed* 336 So.2d 1180 (Fla. 1976), *appeal dismissed for lack of substantial federal question* 429 U.S. 1032, 97 S.Ct. 723, 50 L.Ed.2d 743 (1977). Having already found that the determined public purpose of the ordinance is the safety and general welfare of the county's residents, the Court will not interfere with such a determination. While it is possible for some ordinances to have such slight relationship to health, safety, morals, or general welfare, and such an inhibitive effect upon the conduct of business, as to be an invalid exercise of police power, *Miami v. Shell's Super Store, Inc.,* 50 So.2d 883, 884 (Fla.1951), that is not the case with the ordinance in this case. The fact that the ordinance will affect plaintiffs business, and control the free use of their property, does not make the county's police power illegitimate. *Moviematic Inds. Corp. v. Board of County Comm'rs of Dade County,* 349 So.2d 667, 671 (3d D.C.A. Fla. 1977); *Pinellas County v. Dynamic Investments, Inc.,* 279 So.2d at 98. The ordinance affects all "establishments dealing in alcoholic beverages" equally, forbidding them absolutely from selling or permitting the consumption of alcoholic beverages between 2:00 a. m. and 7:00 a. m. daily. The class of prohibited establishments is impartial and nondiscriminatory. The Court holds the ordinance to be a fair and reasonable exercise of the county's police power.

### 4. *Public or Private Nuisance*

Plaintiffs contend that, at most, their business activity might cause a public or private nuisance, and that an attempt to ban such by a legislative body is impermissible. Instead, they argue that the only proper way to abate a public or private nuisance is by means of judicial determination and injunction. *Prior v. White,* 132 Fla. 1, 180 So. 347, 355 (1938). To be sure, that is the law of Florida.

■ Nonetheless, the same activity can result in a public or private nuisance, subject to judicial injunction, and also be an area of activity properly subject to regulation and control for a legitimate public purpose. The Court has concluded that the ordinance in this case is a reasonable instrument for regulating the sale and consumption alcoholic beverages during the hours of 2:00 a. m. to 7:00 a. m. daily, in the interest of achieving a legitimate public purpose. The fact that plaintiffs' particular business

activity, which is included within the scope of the ordinance's prohibition, might also be subject to a court injunction as a public or private nuisance in no way invalidates the county's proper exercise of its police power to enact the ordinance. Moreover, because the Court has determined the ordinance to be a lawful exercise of the county's police power, it must necessarily reject the contention that the ordinance is merely an attempt to curb legislatively a possible public or private nuisance. To hold that the ordinance is a legitimate and permissible exercise of the county's police power is to hold that it is not an abuse of that power by merely attempting to halt a public or private nuisance.

### VII. *Conclusion*

The Court concludes that ordinance 1978–1 of Lake County, Florida satisfies the standards of equal protection and substantive due process, required by the federal constitution, and meets the standard for lawful exercise of police power under the Florida constitution. Judgment will be rendered for defendants.