444 So.2d 1137 (1984)
STATE of Florida, Appellant,
v.
Carolyn WALKER, Appellee.
No. 83-1047.
District Court of Appeal of Florida, Second District.
February 8, 1984.
*1138 Jim Smith, Atty. Gen., Tallahassee, and Peggy A. Quince, Asst. Atty. Gen., Tampa, for appellant.
Robert E. Jagger, Public Defender, and Robert J. Lancaster, Asst. Public Defender, Clearwater, for appellee.
GRIMES, Acting Chief Judge.
This appeal involves a constitutional challenge to section 893.13(2)(a)7, Florida Statutes (1981), which requires that a lawfully dispensed controlled substance must be kept in the container in which it was originally delivered. We have jurisdiction pursuant to Florida Rules of Appellate Procedure 9.140(c)(1)(A) and section 26.012(1), Florida Statutes (1981).
The facts are not in dispute. On the morning of June 30, 1982, appellee Carolyn A. Walker was preparing to leave for work. She took two tablets of Centrax, a controlled substance, from an original container which she had lawfully obtained from an authorized person. She wrapped the tablets in a paper napkin and placed the napkin in her purse, intending to consume the tablets during the day as specified by her prescription. On her way to work she was involved in a traffic accident. Subsequently she was detained for a driver's license violation and her purse was searched. The Centrax tablets were then discovered. She was charged with a violation of section 893.13(2)(a)7, a first degree misdemeanor, which provides as follows:
(2)(a) It is unlawful for any person:
... .
7. To possess a controlled substance lawfully dispensed to him by a pharmacist or practitioner, in a container other than that in which the controlled substance was originally delivered.
In county court Ms. Walker filed a motion to dismiss the information, arguing that section 893.13(2)(a)7 was unconstitutionally vague, overbroad, and violated the equal protection clauses of the state and federal constitutions. In a well-reasoned order the court granted her motion, holding that the section was unconstitutional on the grounds of substantive due process and equal protection. The state appeals.
In reaching its decision, the court relied on claims of equal protection and substantive due process. Since the test is essentially the same where no fundamental rights are at stake, United Yacht Brokers v. Gillespie, 377 So.2d 668 (Fla. 1979), we prefer to focus on the latter argument. Under a substantive due process analysis, legislation is examined to determine whether it unreasonably and unjustifiably transgresses the fundamental restrictions on the power of government to intrude upon individual rights and liberties. If irrational legislative means have been adopted to realize the given legislative goals, then a constitutional violation exists. Patch Enterprises v. McCall, 447 F. Supp. 1075 (M.D.Fla. 1978). As Judge Scott reasoned in Patch:
The basic test of substantive due process is whether the state can justify the infringement of its legislative activity upon personal rights and liberties. So long as the legislative activity does not encroach upon constitutional guarantees, or run afoul of federal statutory law, a state has a broad scope of discretion in which to regulate the conduct of its citizens... . It need only be shown that the challenged legislative activity is not arbitrary or unreasonable... . Courts will not be concerned with whether the particular legislation in question is the most prudent choice, or is a perfect panacea, to cure the ill or achieve the interest *1139 intended... . If there is a legitimate state interest which the legislation aims to effect, and if the legislation is a reasonably related means to achieve the intended end, it will be upheld... . Nevertheless, despite a state's wide discretion, and the cautious restraint of the courts, there remain basic restrictions and limits on a state's legislative power to intrude upon individual rights, liberties, and conduct. To exceed those bounds without rational justification is to collide with the Due Process Clause.
447 F. Supp. at 1081, 1081 (citations omitted).
The Florida Supreme Court has framed the issue as whether a statute bears a reasonable relation to a permissible legislative objective and is not discriminatory, arbitrary, or oppressive. Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla. 1974). Since the basic principle of substantive due process is to protect the individual from an abusive exercise of governmental powers, this court has held that legislation must not arbitrarily state that actions which are inherently and generally innocent shall constitute criminal offenses. City of St. Petersburg v. Calbeck, 114 So.2d 316 (Fla. 2d DCA 1959).
In Simmons v. Division of Pari-Mutuel Wagering, 407 So.2d 269 (Fla. 3d DCA), aff'd, 412 So.2d 357 (Fla. 1982), our sister court struck that portion of section 550.241, Florida Statutes (Supp. 1980), which prohibited the racing of an animal injected with a drug or "any substance foreign to the natural horse or dog." The court acknowledged the proper exercise of the state's police power for the valid legislative objectives of preserving the integrity of the sport of racing and protecting the health of the animals. The issue then became whether an absolute ban on the use of drugs, medication, and any other substance foreign to the animal was a reasonable means to attain those objectives. The court ruled that that section of the statute banning any foreign substance resulted in prohibiting the use of all substances, helpful and harmful, beneficial and detrimental. When weighed against the legislative reasons for the statute, the section lacked a rational basis to the objectives. See also Horsemen's Benevolent & Protective Association v. Division of Pari-Mutuel Wagering, 397 So.2d 692 (Fla. 1981).
Our task is first to examine the legislative goals of chapter 893, Florida's Drug Abuse Prevention and Control Act, and then to determine whether the means chosen, that is section 893.13(2)(a)7, bears a reasonable relationship to any of those objectives. According to the preamble of chapter 73-331, Laws of Florida, the legislative objectives of chapter 893 are: (1) eliminate the confusion resulting from the existence of two statutory chapters on drug abuse by combining both into one chapter; (2) create uniformity between federal and state drug laws; and (3) expand the exercise of the state's authority over the manufacture and distribution of dangerous drugs. As found by the court below, these are "reasonable and worthwhile objectives." We also agree with the trial court's determination that only the third objective, that of expanded state control over the manufacture and distribution of dangerous drugs, is a legitimate legislative objective to which section 893.13(2)(a)7 could be rationally related. See Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). On this point, the court below stated: "[O]utlawing possession of drugs secured in a fashion sanctioned by state law has nothing to do with the prevention of unlawful manufacture, distribution and possession of controlled substances. It is totally irrational."
As explained by the trial court, the section does not facilitate and may serve to obstruct that objective:
[T]he statute under attack in the case at bar is inconsistent with the objective of the statutory scheme and "cannot be said to bear a fair and substantial relationship to the objective sought." Indeed, § 893.13(2)(a)(7) Fla. Stat. (1981) hampers the accomplishment of the legislative objectives. It lends itself to intentional drug abuse in two significant ways. First, *1140 one who must consume significant quantities of drugs (i.e. a heart patient) must carry all of them with him during his daily activities, thereby making them easily accessible to many people during the course of the day. Second, compliance requires that those persons who have prescription tranquilizers carry many pills with them in order to take their daily dosage. If the stresses of daily life become to [sic] great it is easy to reduce the stress by consuming excess dosages of the tranquilizers, because they are readily available in the original container which must be carried by the patient.
The law also enhances the opportunity for accidental abuse of prescribed drugs in that it prohibits utilization of pill boxes or any other device to keep track of the proper daily and weekly dosages. It is consistent with common sense and reason to conclude that many elderly citizens and others lose track of the amount of drugs they have consumed in the absence of such a technique.
The arguments in support of the statute are unconvincing. The state suggests that the public welfare is benefited by enabling a person administering emergency medical treatment to easily determine proper drug dosages. This argument arbitrarily assumes that persons will always carry their prescription drugs with them. More importantly, such activity has nothing to do with the objective of controlling the manufacture and distribution of dangerous drugs.
The state also asserts that since possession of a controlled substance is unlawful except as provided by the drug laws, the statute permits a police officer to readily determine the legality of one's possession by identification of the original prescription container. The legislative concern of chapter 893, however, is to convict persons who illegally possess controlled substances, not those who remove prescription drugs from their original containers. When weighed against the stated legislative objective, we find that the application of section 893.13(2)(a)7 is an irrational means to achieve that goal. Simply because one does not carry drugs in a proper container does not mean that he unlawfully possesses a controlled substance. The police can properly arrest an individual in possession of a controlled substance without this section. To avoid conviction for a possession charge, the individual ultimately will have to show that he obtained such substance in a legal manner. He can do that even without ever producing the so-called original container.[1]
In the final analysis, section 893.13(2)(a)7 criminalizes activity that is otherwise inherently innocent. We do not believe that taking a lawfully prescribed medication from its original container and placing it in a different container, whether for convenience, dosage, or for some other personal reason, is criminal behavior. In Robinson v. State, 393 So.2d 1076 (Fla. 1980), our supreme court considered the constitutionality of a statute prohibiting the wearing of any covering over the face so as to conceal identity. Obviously, a general prohibition against wearing a mask would assist law enforcement officers in determining the identity of persons involved in criminal activity. Yet, because the statute was susceptible of application to entirely innocent activities, the court struck it down as creating prohibitions which completely lacked any rational basis. In the same manner, even if section 893.13(2)(a)7 helps law officers in deciding whom to arrest, the blanket prohibition against carrying prescription drugs which are controlled substances except in original containers causes activities which are otherwise entirely innocent to become criminal violations. Without evidence of criminal behavior, the prohibition of this conduct lacks any rational relation to the legislative purpose of controlling drug distribution. See Schultz v. State, *1141 361 So.2d 416 (Fla. 1978); Foster v. State, 286 So.2d 549 (Fla. 1973).
Accordingly, we find that section 893.13(2)(a)7 does not bear a reasonable relationship to the legislative objective of expanding the state's control over the manufacture and distribution of dangerous drugs. We declare section 893.13(2)(a)7, Florida Statutes (1981), in violation of our state and federal constitutions, and we affirm the dismissal of the information.
SCHEB and LEHAN, JJ., concur.
NOTES
[1] While we agree with the need for effective law enforcement, we respectfully submit that other, less drastic alternatives are available. For example, a cited individual might be permitted to produce evidence of legal possession within a given time limit so as to avoid prosecution. Cf. § 322.15, Fla. Stat. (1981).