BOYER, Acting Chief Judge.
Appellee Chadbourne is an asphalting contractor which does business with the Department of Transportation. This dispute involves the amount owed under a paving contract after legislative enactment of Section 337.143, Florida Statutes (1975) and its subsequent amendment in 1976.
*606 This is an appeal from an amended summary final judgment, in which the learned trial judge recited his reasoning as follows:
“This cause came on to be heard on motions for summary judgment filed by both parties, both parties agreed before the Court that no issues of fact were to be decided and that the sole issue before the Court was a question of law, and the Court having considered the pleadings, exhibits, affidavits and stipulation before the Court, and after hearing the argument of counsel and reviewed the briefs submitted by counsel, finds:
“1. That the case indeed will be decided by which act of the legislature applies, Section 337.143, F.S.1974, or the same section as amended by the 1976 legislature.
“2. The 1974 Florida legislature passed a bill directing the defendant to adjust the unit price for bituminous materials used in contracts for roadway' construction for which bids had been received by the defendant before April 1, 1974, and for which such materials had not been used on road construction contracts before December 1, 1973. The act further required contractors accepting the provisions of the act to submit all such contracts to the terms of the act.
“3. Following the adoption of the act, the defendant promulgated the necessary rules to implement the legislative will and sent the plaintiff proper notice of such implementation.
“4. The plaintiff elected to submit all of its contracts to the defendant for re-computation in accordance with the statute and rules then in effect. For the three contracts then completed within the statutory time frame the defendant paid the plaintiff additional compensation on two of them and deducted from the contract price of the other.
“5. The Leonard Street contract, the subject of plaintiff’s complaint, was completed by the plaintiff and accepted by the defendant. Whereupon, under new rules promulgated by the defendant, the defendant declined to pay the statutory adjustment. It was agreed at the hearing that if the 1974 statute applies, the defendant owes the plaintiff $31,255.38.
“6. This suit was filed in 1975. Following an unsuccessful appeal on a venue question, the defendant answered and counterclaimed, pleading the 1976 statute as a defense and in its counterclaim demanded reimbursement from the plaintiff for the sums previously paid to the plaintiff under the 1974 statute.
“7. The legislature could not force the plaintiff to accept the terms of the 1974 statute, for to do so would have been contrary to the United States and Florida constitutions as an impairment of a valid and existing contract. The legislature did not attempt to do so, but gave contractors a choice. The plaintiff chose to participate, taking the good with the bad. The 1976 legislature amended the statute involved, again giving contractors a choice. The plaintiff did not elect to participate, instead relying on its rights under the 1974 statute.
“8. The defendant now seeks to recover in its counterclaim the amounts previously paid to plaintiff under the 1974 statute and rules. The plaintiff elected to come under that statute, and the defendant made payments called for by law. The defendant cannot now seek reimbursement for that which was lawfully paid to plaintiff. It is therefore,
“ADJUDGED that:
“1. The defendant’s motion for summary judgment on its counterclaim is denied.
“2. The plaintiff’s motion for summary judgment is granted and that the plaintiff do have and recover of and from the defendant a judgment for $31,255.38, plus interest to date of $3,644.37 and court costs of $26.50, for a total of $34,-926.25.”
The record reveals that in 1974, in response to rising prices caused by the energy crisis, the Florida legislature enacted Section 337.143 (Chapter 74-262, Laws of Florida), directing the Department to adjust the unit price for bituminous materials used in *607 contracts for roadway construction for which bids had been received by the Department before April 1, 1974. As recited by the trial judge, the contractor could choose to proceed either under his established contract price or could have his compensation adjusted monthly by the Department, based upon the current price index for asphalt. The act did not apply to material used before December 1, 1973. Contractors which accepted the act’s provisions were required to submit all such contracts to the terms of the act. Chadbourne elected to submit all its contracts to the Department for recomputation. For the three contracts submitted, the Department paid Chadbourne additional compensation on two of them and deducted from the contract price of the other. The contract here under dispute was completed by Chadbourne and accepted by the Department. The Department however refused to make final payment relying upon a 1976 amendment to Section 337.143 (Chapter 76-174, Laws of Florida). That amendment was enacted for the purpose of preventing windfall profits. For example, an asphalt contractor might have entered into a long-term agreement with his supplier before the energy crisis occurred. Despite the low price actually paid for asphalt, the contractor could still under the 1974 act have the benefit of higher current asphalt prices, as adjusted monthly by the Department. The 1976 amendment was designed to avoid such results.
Chadbourne filed suit and the Department counter-claimed seeking reimbursement for sums previously paid under the 1974 statute. The trial judge entered the summary final judgment above quoted, and this appeal followed.
As held by the trial judge, the legislature could not have forced Chadbourne to accept the terms of the 1974 statute, for to do so would be contrary to the United States and Florida constitutions as an impairment of a valid and existing contract. Chadbourne chose, however, to participate, taking the good with the bad. The trial judge construed the 1976 amendment as again giving contractors a choice. We agree. Since Chadbourne did not elect to participate, his payment must be determined under the 1974 act. Having elected to participate under the 1974 act, but having exercised his right not to participate under the 1976 act, the latter did not affect the contracts which were submitted pursuant to the 1974 act prior to the enactment of the 1976 act.
The Department argues the 1974 act did not vest rights in asphalt contractors which would preclude further legislative action. We agree, except as to contracts submitted prior to the further legislative action.
The Department also contends that the subject statute offends Article VII, Section 10, Florida Constitution which provides:
“Pledging Credit Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; . . ”
The Department has standing to contest the validity of a statute affecting it. (State v. Love, 99 Fla. 333, 126 So. 374 (1930)).
The quoted provision of our constitution requires a public purpose for any use of the taxing power of the state. It is settled law that the primary purpose of any governmental undertaking must be public in nature, even though the undertaking may incidentally benefit private corporations or individuals. (State ex rel. Ervin v. Cotney, 104 So.2d 346 (Fla.1958); Bannon v. Port of Palm Beach District, 246 So.2d 737 (Fla.1971)). A governmental undertaking having the converse effect will be struck down. “Incidental benefits accruing to the public from the establishment of some private enterprise is [sic] not sufficient to make the establishment of such enterprise a public purpose . . . ” (Adams v. Housing Authority of City of Daytona Beach, 60 So.2d 663, 669 (Fla.1952)).
*608 However, fixing payment according to a monthly asphalt price index is a double edged sword. At the time F.S. 337.143 was enacted prices were volatile and unstable, capable of dropping abruptly should the oil embargo have failed. The statute then would have operated to the benefit of the state should asphalt prices have plunged. We reject the constitutional attack.
We . have considered the other points raised by the Department and find them too to be without merit.
AFFIRMED.
MILLS, J., concurs.
ERVIN, J., dissents.