382 So.2d 293 (1980)
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellant,
v.
EDWARD M. CHADBOURNE, INC., Appellee.
No. 54264.
Supreme Court of Florida.
February 28, 1980.
Rehearing Denied May 5, 1980.
Jerrold K. Phillips, Tallahassee, Fletcher N. Baldwin, Jr., Gainesville, H. Reynolds Sampson and Alan E. DeSerio, Tallahassee, for appellant.
Thurston A. Shell of Shell, Fleming, Davis & Menge, Pensacola, for appellee.
J. Rex Farrior and Joseph G. Thresher of Shackleford, Farrior, Stallings & Evans, Tampa, for W.L. Cobb Construction Company and Cone Brothers Contracting Company, amicus curiae.
PER CURIAM.
This is an appeal from a decision of the First District Court of Appeal which passed on the constitutional validity of section 337.143, Florida Statutes (Chapter 74-262, Laws of Florida), and an amendment to the statute enacted by the legislature in 1976 as chapter 76-74, Laws of Florida.[1] We have jurisdiction.[2]
We hold that the statute, as originally enacted and as amended, is constitutional but that the 1976 amendment cannot be applied retroactively since to do so would result in an unconstitutional impairment of contract.
*294 In 1973 the Organization of Petroleum Exporting Countries instituted an embargo on shipments of oil to the United States. The embargo caused a dramatic increase in the price of petroleum and petroleum-based products including asphalt. The legislature, recognizing that road contractors had "no control over the rapidly increasing prices of bituminous material," enacted chapter 74-262, Laws of Florida, which became section 337.143, Florida Statutes (1975).[3]
The law allowed an adjustment to the contract unit price to be paid for bituminous materials on which bids were received prior to April 1, 1974, if the material had not been used prior to December 1, 1973. The act specified that no adjustment would be made to the contract "unless a contractor agrees to the application of this adjustment for all applicable contracts he holds with the department." The formula adopted in the statute provided that the adjusted contract unit price would be the asphalt price index computed by the Department of Transportation (department), plus five cents. The monthly index was determined by averaging price quotations on the first day of the month at terminals which could *295 reasonably be expected to supply asphalt to the affected contractors.
When the statute was implemented, an unintentional result became apparent. The index price failed to reflect the actual price paid by some contractors for the asphalt. This allowed those contractors to receive the benefits of the embargo-induced price adjustment and still require their suppliers to provide asphalt at pre-embargo prices in accordance with their subcontracts. This situation thwarted the statute's original objective and allowed some contractors to receive substantial windfall profits from the state. In order to correct the problem of windfall profits, the department enacted an emergency rule seeking to prevent potential overpayments; the legislature followed suit in 1976 by amending the price adjustment formula. § 337.143, Fla. Stat. (1977).[4]
Edward M. Chadbourne, Inc., is an asphalt contractor which had entered into contracts with the department for the pavement of certain state roads. This contractor had elected to submit all of its contracts *296 to the department in accordance with the 1974 statute. When the department withheld funds which the contractor felt were due, it filed this suit seeking funds under the 1974 act. The department answered, counterclaimed, and sought recoupment of funds previously paid under the 1974 law's price formula, asserting that the 1976 amendment applied retroactively. The trial court found that the 1976 statute could not be applied retroactively and found for the contractor.
The district court affirmed the trial court and rejected the contention of the department that the state had given its tax power to aid a corporation or person in violation of article VII, section 10, of the Florida Constitution. In their rulings, the trial judge and the First District Court of Appeal were correct.
The department asserts that the legislature had no constitutional authority to enact this statute to give road contractors an adjustment on existing contracts because of the oil embargo. It also asserts that, if section 337.143 is valid, the 1976 amendment to that section should apply retroactively. Chadbourne contends that section 337.143 is valid and that, when the contractor accepted the price adjustment formula of the 1974 version of the law, the statutory price formula became a part of the contract. Therefore any attempt to apply the 1976 amendment retroactively constituted an impairment of contract in violation of both the Florida and United States Constitutions.[5]
There are two primary issues for us to resolve. First, whether section 337.143 as adopted originally and as amended is constitutional under article VII, section 10, of the Florida Constitution, and, second, if this section is constitutional, may the 1976 amendment be retroactively applied without violating the constitutional prohibition against the impairment of contractual obligations.
With reference to the constitutionality of the statute, the department contends that the law as enacted is prohibited by article VII, section 10, of the Florida Constitution, which provides:
Pledging credit. Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; ...
Although this provision requires that the primary purpose of any governmental undertaking must be public in nature, see Bannon v. Port of Palm Beach District, 246 So.2d 737, 741 (Fla. 1971), this does not mean that the undertaking may not incidentally benefit private corporations or individuals. The purpose of the statute in issue was to made a fair adjustment of the price for both parties so that contractors who build public roads would not be irreparably harmed because of the sudden price escalation caused by a national oil shortage. By accepting the terms of this statute, the contractors subjected themselves to the possibility of receiving less than the original contract price. In fact, Chadbourne did receive less than its bid price on one contract.
We hold that the benefits of the 1974 law, as amended by the 1976 act, run to the public as well as to the road contractors. This statute facilitates the construction of public roads which is, in our view, manifestly a public purpose. We find that the legislature acted legitimately in response to a problem created by an unforeseen embargo on oil shipments. We reject the department's contention that the 1974 law does not benefit the public.
The second issue which must be addressed is whether the 1976 amendment unconstitutionally impaired contractual obligations created pursuant to the 1974 law.
The original enactment in 1974 did not contemplate that there would be windfall profits. The 1976 amendment, however, expressly records the legislative intent that *297 windfall profits be avoided. That was a noble and just attempt to correct a consequence not foreseen in the 1974 act. Unfortunately, that part of the amendment which attempted to affect existing contracts flies into the wall of absolute prohibition. The fact that a law is just and equitable does not authorize its enactment in the face of a constitutional prohibition.
This Court has generally prohibited all forms of contract impairment.[6] This Court recently reviewed the issue of impairment of contracts in great detail in Pomponio v. The Claridge of Pompano Condominium, Inc., 378 So.2d 774 (Fla. 1979). Additionally, Judges Ott and Grimes expressed conflicting views on the application of the impairment of contract clauses to the statute in question in State of Florida, Department of Transportation v. Cone Brothers Contracting Co., 364 So.2d 482 (Fla. 2d DCA 1978). Little can be added to what has been discussed in Pomponio and Cone Brothers. Simply stated, the majority of this Court feels that the views expressed by Judge Grimes in Cone Brothers are correct and should be followed as they relate to the retroactive effect of the 1976 amendment.
This Court therefore concludes that the 1976 amendment clearly affected existing contractual rights of the contractors who had entered into contracts with the state pursuant to the terms of the 1974 act, and the rights and obligations flowing therefrom cannot be affected by the 1976 amendment. Any contracts made after the effective date of the 1976 amendment would, of course, come under the statute as amended.
In accordance with these findings the opinion of the district court is affirmed.
It is so ordered.
ENGLAND, C.J., and BOYD, SUNDBERG and McDONALD, JJ., concur.
OVERTON, J., dissents with an opinion, with which ADKINS and ALDERMAN, JJ., concur.
OVERTON, Justice, dissenting.
I strongly dissent. The constitutional provision prohibiting impairment of contracts should not be interpreted to allow road contractors to receive windfall profits from taxpayer dollars. Such an interpretation is not required by the impairment of contract clause of either the United States Constitution or the Constitution of the State of Florida. In my view, article VII, section 10, of the Florida Constitution, which prohibits the use of state taxing power to benefit private individuals, controls the outcome of this case. The majority's construction of the 1974 statute to allow windfall profits from the public purse is a plain violation of article VII, section 10.
I would hold both the 1974 statute, section 337.143, Florida Statutes (1975), and the 1976 amendment, to be constitutional. This holding, however, would be dependent upon the retroactive application of the 1976 amendment, and its express requirement that the contractors establish that their asphalt cost exceeded the pre-embargo contract price. This express requirement of the 1976 amendment was implicit in the 1974 statute, and was the obvious intent of the legislature when it originally formulated the act. Without this retroactive application of the amendment, the original statute is constitutionally invalid under article VII, section 10.
The statute was enacted to aid contractors whose asphalt costs had drastically, and unpredictably, increased because of the oil embargo. It clearly was not enacted to benefit contractors who had suffered no loss. This statutory benefit to the affected class of contractors served an important public purpose, because without the aid those contractors would have been unable to fulfill their obligations to construct public roads. If the 1976 amendment is not retroactively applied, then contractors whose asphalt costs had not increased, because they had secured asphalt under long-term contracts at pre-embargo prices, would also receive additional state funds *298 under the statute. In that instance no public purpose is served, as the completion of those road construction contracts was never in jeopardy.
I totally reject the assertion by these contractors that they are entitled to the benefits under the 1974 statute, and that application of the 1976 amendment to them constitutes an impairment of their contract with the state. In my opinion, any impairment of contract by the 1976 amendment meets the test expressed in United States Trust Co. v. New Jersey, 431 U.S. 1, 25, 97 S.Ct. 1505, 1519, 52 L.Ed.2d 92 (1977), because it is "reasonable and necessary to serve an important public purpose." The clear purpose of the legislature in enacting the 1976 amendment was to prevent the receipt of windfall profits by the instant contractors, an objective not only "just and equitable," as characterized by the majority, but also necessary to remedy constitutional defects in the 1974 statute.
Neither the state nor the contractors should be penalized or unduly benefited by this statute and amendment, enacted solely because of the 1973 oil embargo. The sole purpose of this legislation was to allow a fair and equitable contract adjustment as a result of a national oil crisis; it should not be interpreted to bring forth a different result.
ADKINS and ALDERMAN, JJ., concur.
NOTES
[1] State of Florida, Department of Transportation v. Edward M. Chadbourne, Inc., 358 So.2d 605 (Fla. 1st DCA 1978).
[2] Art. V, § 3(b)(1), Fla. Const.
[3] Ch. 74-262, Laws of Florida, provides:

AN ACT relating to providing for pay adjustments on Department of Transportation road construction contracts; providing an effective date.
WHEREAS, the price of bituminous material has substantially increased during the past months due partly to the worldwide energy crisis, and the situation now and in the future appears to be very volatile and unstable, and
WHEREAS, a contractor has no control over the rapidly increasing prices of bituminous material after he has successfully bid on a road construction project with the Department of Transportation, and after entering into binding contracts for the supply of bituminous material, and
WHEREAS, the Department of Transportation has recognized this situation by adopting a specification providing for adjustment of the bid unit price for bituminous material which is applicable to contracts on which bids are received after April 1, 1974. The price adjustment activates upon a rise in the current asphalt price index in excess of 5% of the asphalt price index applicable at the time bids were received for a project, and
WHEREAS, contractors on projects for which bids were received by the Department of Transportation prior to April 1, 1974 will suffer irreparable economic harm and injury in performing their contracts upon the failure of the Legislature to enact this law, NOW THEREFORE,
Be It Enacted by the Legislature of the State of Florida:
Section 1. The State of Florida Department of Transportation shall adjust the contract unit price for bituminous material included in any contract for roadway construction for which bids were received by the Department of Transportation prior to April 1, 1974, in accordance with the following:
A. The adjustment shall be calculated separately for each month during which bituminous material is incorporated into a project using the following formula:
Pa = Id + 5 cents where:
Pa = Adjusted unit price for bituminous material.
Id = Department's Asphalt Price Index in effect during the month in which the material is incorporated into the project.
The Department of Transportation shall determine the Asphalt Price Index by averaging quotations in effect on the first day of each month at terminals which could reasonably be expected to furnish bituminous materials to road construction projects in the State of Florida.
B. No adjustment shall be made for bituminous material used prior to December 1, 1973.
C. No price adjustment reflecting any further increases in the cost of bituminous material shall be made for any month after expiration of the allowable contract time, including any extensions that may be granted.
D. The Department shall adopt rules to implement payment of this adjustment.
E. No adjustment shall be made to the contract unit price for bituminous material on any applicable contract unless a contractor agrees to the application of this adjustment for all applicable contracts he holds with the department. The department shall notify each contractor in writing by registered mail of his right to have this act apply to his contracts with the department. If a contractor fails to respond within 15 calendar days of such notice, no adjustment provided for in this act shall be made to any applicable contract.
Section 2. Any contractor receiving additional compensation under this act shall, if applicable, pay the entire amount of such additional compensation to the subcontractor who performed the asphalt work on the project.
Section 3. This act shall take effect upon becoming a law.
Approved by the Governor June 18, 1974.
Filed in Office Secretary of State June 19, 1974.
[4] Ch. 76-174, Laws of Florida, provides:

AN ACT relating to transportation; amending s. 337.143, Florida Statutes, providing legislative intent; requiring documentation of certain costs; prohibiting the Department of Transportation from making cost adjustments under certain circumstances in the contract unit price for bituminous materials included in road construction contracts; providing an effective date.
Be It Enacted by the Legislature of the State of Florida:
Section 1. Section 337.143, Florida Statutes, is amended to read:
337.143 Adjustment of contract price for bituminous material; providing legislative intent. 
(1) Recognizing that the unprecedented increase in the cost of petroleum products seriously affects a vital segment of the construction industry, legislative intent was, and is, to protect, by this act, said industry from irreparable economic harm and injury. It was not, and is not, legislative intent that any single contractor or group of contractors should receive excess or windfall profits to the detriment of the taxpayers, and the department shall take immediate steps to recoup any excess payments made since July 1, 1974.
(2) The Department of Transportation shall adjust the contract unit price for bituminous material included in any contract for roadway construction for which bids were received by the department prior to April 1, 1974, in accordance with the following:
(3)(a) (1)(a) The adjustment shall be calculated separately for each month during which bituminous material is incorporated into a project, using the following formula: Pa = Id plus 5 cents, where:
1. Pa = The adjusted unit price for bituminous material; and
2. Id = The department's Asphalt Price Index in effect during the month in which the material is incorporated into the project.
(b) The department shall determine the Asphalt Price Index by averaging quotations in effect on the first day of each month at terminals which could reasonably be expected to furnish bituminous materials to road construction projects in the state. However, the department shall require documentation of actual costs paid prior to making any adjustments.
(4) The department shall not made any adjustment under subsection (3)(a) where "Pa" exceeds:
(a) The actual unit price paid by the contractor plus 5 cents, or
(b) The bid price plus the difference in the Asphalt Price Index on December 1, 1973, and the Asphalt Price Index at the time of application.
The department shall use the lesser of subsection (4)(a) or (b) as the basis for adjustment if the provision of subsection (3)(a) does not apply.
(5) (2) No adjustment shall be made for bituminous material used prior to December 1, 1973.
(6) (3) No price adjustment reflecting any further increases in the cost of bituminous material shall be made for any month after expiration of the allowable contract time, including any extensions that may be granted.
(7) (4) The department shall adopt rules to implement payment of this adjustment.
(8) (5) No adjustment shall be made to the contract price for bituminous material on any applicable contract unless a contractor agrees to the application of this adjustment for all applicable contracts he holds with the department. The department shall notify each contractor in writing by registered mail of his right to have this section apply to his contracts with the department. If a contractor fails to respond within 15 calendar days of such notice, no adjustment provided for in this section shall be made to any applicable contract.
(9) (6) Any contractor receiving additional compensation under this section shall, if applicable, pay the entire amount of such additional compensation to the subcontractor who performed the asphalt work on the project.
Section 2. This act shall take effect upon becoming a law.
Approved by the Governor June 17, 1976. Filed in Office Secretary of State June 18, 1976.
[5] Art. 1, § 10, Fla. Const.; U.S.Const., art. 1, § 10, cl. 1.
[6] United Gas Line Co. v. Bevis, 336 So.2d 560 (Fla. 1976); Yamaha Parts Distr. Inc. v. Ehrman, 316 So.2d 557 (Fla. 1975); Fort Lauderdale v. State ex rel. Elston Bank & Tr. Co., 125 Fla. 89, 169 So. 584 (1936).