Mr. Allison E. Folds City Attorney City of Alachua 527 East University Avenue Post Office Box 1070 Gainesville, Florida 32602
Dear Mr. Folds:
This is in response to your request for an opinion on substantially the following question.
 DOES A MUNICIPAL POLICE DEPARTMENT HAVE THE DUTY OR AUTHORITY TO ENFORCE THE PROVISIONS OF CH. 316, F.S., THE UNIFORM TRAFFIC CONTROL LAW, ON PRIVATE ROADS LOCATED WITHIN A PRIVATE DEVELOPMENT?
According to your letter, the Turkey Creek Planned Unit Development, which consists of single and multi-family dwellings, a golf course and a golf and racquet club, is located within the municipal boundaries of the City of Alachua. All streets and boulevards located within the development are owned and maintained by the Turkey Creek Master Owners Association, Inc., a nonprofit Florida corporation. Under the restrictive covenants of the development, owners of units within the development have a perpetual nonexclusive easement of access to and from their units over the development's roadways while the owner, members, employees, guests and invitees of the golf and racquet club possess an easement of access over those roads located in the "community area" of the development. In addition, the City of Alachua, together with any other governmental authority or utility having jurisdiction over the development area, has an easement over the development's roads for police, fire, ambulance, waste removal and other vehicles for the purpose of furnishing utilities or municipal or emergency services to the premises.
You state that although the roadways are private, the access road to the development is not blocked by a gate and the owners association does not preclude anyone from entering the development. In addition, as the golf and racquet club is open to the general public, those members of the public coming to the club have an express access easement as invitees of the club over the roadways located in the "community area." Under the restrictive covenants governing this private development, the owners association has adopted certain traffic regulations and has requested assistance from the city's police department in controlling violations of the posted speed limits and traffic signs; however, the association has stated that it does not wish all the provisions of Ch. 316 to apply to its roads. You therefore inquire whether the police department of the City of Alachua may enforce the provisions of Ch. 316 within the development.
Section 316.640(3)(a), F.S., sets forth the authority of a municipality to enforce the traffic laws of this state by providing in pertinent part:
 The police department of each chartered municipality shall enforce the traffic laws of this state on all the streets and highways thereof and elsewhere throughout the municipality wherever the public has the right to travel by motor vehicle. (e.s.)
In providing for the enforcement of Ch. 316, F.S., the Uniform Traffic Control Law, the Legislature did not distinguish between public roads and private property where the public has a right to travel by motor vehicle, nor does there appear to be any reasonable basis for such a distinction. Cf., s 316.072(1), F.S., which provides that Ch. 316 shall apply "upon all state-maintained highways, county-maintained highways, and municipal streets and alleys and wherever vehicles have the right to travel." Thus municipalities have enforcement authority with respect to traffic violations and accidents occurring on "private property" where the public has the right to travel by motor vehicle. See generally, s316.003(21), F.S., defining "motor vehicle" for purposes of Ch. 316.
Whether this "right" exists in any given situation, however, is a mixed question of law and fact which this office cannot resolve. This office has previously stated that the apparent intent of the Legislature was to make Ch. 316 applicable to such privately owned "public" or "quasi-public" facilities as shopping centers, parking lots, etc. See, e.g., AGO's 72-383 and 73-323. See generally, AGO 51-183, June 28, 1951, Biennial Report of the Attorney General, 1951-1952, p. 481, and AGO's 66-59 and 58-144 (where private owner permits the general and common use of a street or way by the public, he subjects such street to all necessary controls which are applicable to public streets). Thus it is the availability of the area for, and the right to, the general and common use thereof by the public which makes it a quasi-public area and provides authority for the public control thereon pursuant to s316.640(3)(a).
Compare, s 316.003(54), F.S., as amended by s 1, Ch. 83-164, Laws of Florida, defining "street or highway" in pertinent part as "[t]he entire width between the boundary lines of every way or place of whatever nature when any part thereof is open to the use of the public for the purposes of vehicular traffic . . ."; with s316.003(34), F.S., defining "private road or driveway" as "[a]ny privately owned way or place used for vehicular travel by the owner and those having express or implied permission from theowner, but not by other persons." (e.s.) While you state that under the restrictive covenants of the development the general public has the right to travel on certain roads owned and maintained by the owners association within the development (i.e., within the "community area") when traveling to and from the golf and racquet club as guests or invitees of the owner of the golf and racquet club, I am unable to conclude that such access, in and of itself, would make the roads within the development quasi-public or grant to the public any general or common right to travel on them. Nor can I conclusively state that the actions of the owners association in not blocking the access road to the development by a gate and in not affirmatively precluding any member of the public from entering the development, constitutes a grant to the public of the right to generally and commonly use the roads in question, especially in light of the terms of the recorded restrictive covenants which govern the ownership and rights of access and usage of the roads in question and which appear to limit access to the roads within the development. A determination, however, as to whether the public has a right to use the development's roadways will be dependent upon the precise nature of the permitted use of the roads in question.
Such a determination involves mixed questions of law and fact which this office cannot address; rather, such issues must be determined by the courts in an appropriate adversary proceeding initiated for that purpose. If, however, the public in general is permitted to commonly use these privately owned and maintained roads and is given ready access to this development and thereby acquired a right to travel by motor vehicle on the roads therein, then the right of the motoring public may well be established and the municipal police department would be authorized pursuant to s316.640(3)(a) to enforce the provisions of Ch. 316 on such roads. If access to and common use of such roads is not generally available to the public, but is legally limited (by the recorded restrictive covenants governing this development) to those having express or implied permission from the owner, then the provisions of Ch. 316 would not appear to be applicable as such property would not be a "public" or "quasi-public" area available for the general and common use by the public, or an area or place where "the public has the right to travel by motor vehicle." (e.s.)
I would note that in those areas in which the public does not have a right to travel by motor vehicle, the municipal police department has not been granted enforcement authority by s316.640(3)(a). Therefore, local authorities do not have either the right or the obligation or the authority to enforce the provisions of Ch. 316 on such private property where the motoring public is not permitted to generally or commonly use or invited to travel, regardless of whether the local authorities are called or invited onto such premises, see, AGO 75-104; nor can a private owners association or its members confer any jurisdiction on the city to regulate traffic on private property for the benefit of the private property owners. It should be noted that the test for the expenditure of any public funds by a municipality or other governmental entity in this state is whether the expenditure in question is for a purpose which primarily benefits the public with any benefits to private interests being only secondary and incidental. See, e.g., O'Neill v. Burns, 198 So.2d 1 (Fla. 1967); Bannon v. Port of Palm Beach District, 246 So.2d 737 (Fla. 1971); State, Department of Transportation v. Edward M. Chadbourne, Inc.,382 So.2d 293 (Fla. 1980); State v. City of Miami, 379 So.2d 651
(Fla. 1980).
This office has previously stated that a municipality is not authorized to expend public funds to repair privately owned roads or streets in which the municipality has no property right or interest and over which the public has no easement or right to use for roadway purposes or to travel as such an expenditure would contravene the provisions of s 10, Art. VIII, State Const., and would not meet the test of being for a primarily public purpose with only incidental private benefits. See also, AGO's 78-88, 75-309 and 73-222 relating to such expenditures by counties. Andsee, AGO 81-18 stating that if the roads in question are not county roads, they cannot be maintained or repaired by the county or county funds expended therefor; moreover, county funds may be used to defray the costs of installation and maintenance of traffic control devices and signs only on roads which are county roads or are open to the motoring public. The issue of whether a municipality may expend public funds to provide traffic enforcement on private roads is therefore dependent upon whether the public has a right to travel on such roads by motor vehicle.
Accordingly, I am of the opinion that the provisions of Ch. 316, F.S., are enforceable on private property only when the public has a right to travel by motor vehicle thereon. If access to and common use of roads on private property is not generally available to the public but is legally limited by recorded restrictive covenants to those having express or implied permission from the owner, then the provisions of Ch. 316 are not applicable and the municipal police department does not have the right or obligation or authority to enforce Ch. 316 on such private property regardless of an invitation by the private property owners to said department. Whether the public has been granted a right to travel on private property by motor vehicle depends upon the circumstances in a given situation and involves mixed questions of law and fact which this office cannot resolve.
Sincerely,
Jim Smith, Attorney General
Prepared by: Joslyn Wilson, Assistant Attorney General